# Petition of Lyndonville Village

[151 A2d 319]

March Term, 1959.

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed May 5, 1959.

*Clarence V. Akley* and *Lee E. Emerson* for the petitioners.

**Barney, J.** On April 22, 1957 Lyndonville, Barton and Orleans villages filed with the Public Service Commission a petition on behalf of their respective municipal electric facilities requesting that under the authority of §2 of No. 193 of the Acts of 1951 the Commission order the Vermont Electric Power Company, Inc., to construct a certain high-power transmission line as part of the transmission system for the distribution of St. Lawrence power, so-called. This proposed line would connect the Central Vermont Public Service Corporation system in St. Johnsbury with the Citizens Utilities Company system at the Sutton Pumping Station, so-called, in the Town of Sutton.

Section 2 of No. 193 of the Acts of 1951 defines the duties of the Commission as follows:

> "Sec. 2. Jurisdiction. The public service commission shall have jurisdiction to order electric companies subject to its supervision to build or rebuild electric transmission lines in order to provide adequate interconnection between the transmission systems of the state. The commission shall have power to exercise the jurisdiction herein conferred only after due notice to all interested parties and hearing and after making findings based on adequate evidence that the ordered construction:
>
> I. Is necessary in the interests of consumers of electrical energy;
>
> II. Is not detrimental to the interests of the investors of the company ordered to build or rebuild;
>
> III. Will serve the public good."

The Commission gave appropriate notice to all parties in interest including Vermont Electric Power Company, Central Vermont Public Service Corporation, and Citizens Utilities Company. Hearing was held before the Commission in Barton on June 11, 1957. Vermont Electric Power Company, the utility upon whom the responsibility of the proposed construction would fall, entered no appearance, did not participate and was not represented at the hearing. This amounted

to a concession by that utility that its investors' interests would not be affected detrimentally to a degree sufficient to warrant contesting the petition or participating in the hearing. Petitioners at the hearing went forward with their evidence. Certain record evidence, as well as testimony by way of cross-examination, was put in by the Commission. At the close of the hearing the petitioners reserved the right to supplement their evidence with certain cost data relating to construction of a high-power transmission line from St. Johnsbury to Sutton Pumping Station.

On December 17, 1957 the Commission, stating that the construction cost data had not been forthcoming after five months, filed its report and findings denying the petition without prejudice. The petitioners duly excepted to certain of these findings, to the findings generally, and to the Commission's order denying their petition, perfecting their appea to this Court by bill of exceptions duly filed. Prior to argument the village of Orleans withdrew from this appeal.

■ The petitioners have seen fit to brief and argue in this Court only the exceptions dealt with in this opinion. All others are to be deemed waived. *City of Montpelier* v. *Bennett* 119 Vt 228, 230, 125 A2d 779; *Smith* v. *DeMetre*, 119 Vt 73, 77, 118 A2d 346, 58 ALR2d 1; *Richardson* v. *Persons*, 116 Vt 413, 416, 77 A2d 842.

The evidence material to the questions raised in this Court presented at the hearing disclosed that the electric systems of Barton and Orleans villages will receive St. Lawrence power through a high voltage transmission line belonging to Citizens Utilities Company running across the northern part of the State via Highgate and Newport and ending at Sutton Pumping Station. Lyndonville will receive St. Lawrence power in its system through a 12.5 KV line connecting with the Central Vermont Public Service Corporation system in St. Johnsbury via Pierce's Mills. St. Lawrence power comes to the St. Johnsbury area from Barre to McIndoes and the Comerford Station of the New England Power Company on the Connecticut River, thence to St. Johnsbury. There is no transmission line at present connecting the Lyndonville or St.

Johnsbury systems directly with Sutton Pumping Station or any of the Barton, Orleans or Citizens Utilities Company systems. The intervening distance for construction purposes is approximately twenty-five miles. An engineering report prepared for the Commission known as the Barker & Wheeler report, an exhibit in the case, recommends the construction, when justified by load requirements, of a 115 KV line from Barre through Comerford and north, possibly extending ultimately into Newport. A 69 KV line from Barre through to Sutton was suggested as a less desirable alternative, with loads at the time of the report (January, 1957) not justifying construction as part of the initial St. Lawrence power transmission system. No evidence of cost of the proposed line was introduced other than the negative testimony that figures of four to five million dollars were too high, although permission was sought and granted for petitioners to submit such data subsequent to the time of hearing. The evidence introduced by petitioners was to the effect that such a Sutton-St. Johnsbury line either at 69 KV or 115 KV would greatly help the dependability and stability of service in the whole northeastern area of Vermont without greatly affecting the cost of St. Lawrence power to the consumer.

Petitioners also presented evidence indicating that the 12.5 KV line which is Lyndonville's only tie to the remainder of the power system of the State is currently operating at a capacity allowing no reserve for load growth and is in a hazardous location for dependability of service, particularly since the Lyndonville load exceeds its generating capacity and requires the constant acquisition of additional power over this line by purchase from the Central Vermont Public Service Corporation. Barton is likewise served only by a single transmission tie-in by way of the Orleans system connecting it to the Citizens Utilities Company system and is dependent upon a constant supply of purchased power to make up the deficit between present load and generating capacity.

Two days following the hearing in this matter the contract between the Vermont Electric Power Company and the Public Service Commission was executed, pursuant to the designation of the Commission as contracting agency for the transmission

of St. Lawrence power by the Legislature in No. 97 of the Acts of 1955. That contract contained the following provision with respect to the Barker & Wheeler report:

> "The general transmission plan recommended by Barker & Wheeler as consulting engineers for the State in their 'Report on a Transmission Plan for the State of Vermont in connection with St. Lawrence River Power from the Power Authority of the State of New York' dated January 22, 1957, shall control as to all such facilities, and alternatives, substitutions or additions shall be made only with the approval of the State."

Petitioners take the position that this contract should form part of the record and have incorporated it in full in the printed case. This has not been challenged.

The general transmission plan contained in the contract does not provide for the construction of any new transmission facilities between St. Johnsbury and Lyndonville, between St. Johnsbury and Sutton, or between Lyndonville and Sutton.

Petitioners have taken an exception to the findings generally for what they allege to be the failure of the Commission to make the specific determinations under the statute relating to (a) the interests of consumers of electrical energy, (b) the interests of the investors of the company ordered to carry out construction, and (c) the public good. Petitioners concede that an adverse finding on any one of these three criteria, based on competent evidence, would bar their petition.

The Commission found that the proposed construction will not promote "the general good of the State." The petitioners contend that this is the only finding which might be said to be a determination under the three criteria above mentioned. From this they argue that if that finding is not supportable the duty of the Commission has not been discharged and remand is required.

The attack of petitioners on the finding is two-fold: first, that the finding is a conclusion of law based upon findings that do not support it; and second, that the proceedings reveal a prejudging by the Commission amounting to a denial of due process.

■ It is not the function of this court to require that the facts be found in accordance with our view of the evidence, thereby substituting our judgment for that of the trier. In this matter, by legislative mandate, the Commission is the trier of the facts. Their weighing of the evidence must be sustained if there is evidence to support it. *Petition of Stowell*, 119 Vt 298, 302, 125 A2d 807.

■ The finding of the Commission here in question is a negative one, i.e., that the granting of the petition is not for the general good of the State. This finding was excepted to by the petitioners. The statute requires that a finding that proposed construction would serve the public good be based on adequate evidence. The petitioners, as advancing parties, had the burden of producing that evidence. *Houran, Admr.* v. *Preferred Acc. Ins. Co.*, 109 Vt 258, 271, 195 A 253. In a supporting finding the Commission stated that it was unable to make any finding relative to the cost of construction of the proposed transmission line from the evidence presented. The petitioners also excepted to this finding. The report further pointed out the failure of petitioners to come forward at any time with evidence as to this very matter of cost, even though, at petitioners' request, leave was granted to present it out of time.

■■ The cost of a project of this type is one of the critical elements in evaluating public good. The cost represents the burden against which the benefits must be balanced, particularly where the impact of such cost will be passed on to the State's consumers of electrical energy generally. In the absence of evidence as to cost of construction in circumstances such as those set forth in the petition here, it would be error for the Commission to have found affirmatively on the issue of public good. *Petition of New England Telephone and Telegraph Co.*, 120 Vt 181, 193, 136 A2d 357; *Newport* v. *Citizens Utilities Co.*, 116 Vt 103, 105, 106, 70 A2d 590. There was no evidence in the case to support a finding of the cost of constructing the transmission line, and any finding by the Commission purporting to determine cost would also have been error. *Petition of New England Telephone and Telegraph Co.*, *supra*, 120 Vt at

192, 193, 136 A2d at 365; *In re New England Power Corporation,* 103 Vt 453, 459, 156 A 390.

In view of the state of the evidence as to cost of construction disclosed by the transcript the Commission properly declined to make any findings as to cost and therefore properly declined to find affirmatively on the issue of public good. Petitioners' exceptions to these findings are not sustained. *Shaw v. Shaw,* 99 Vt 356, 358, 133 A 248.

The petitioners seek to avoid the consequence of failing to introduce evidence as to cost of construction by stating that the record makes so obvious a case of prejudging on the part of the Commission that to introduce such evidence would have been a vain and futile act, therefore unnecessary. It is apparent that if the petitioners' position is well taken, the introduction of evidence of cost favorable to them would have had the effect of making it more difficult for the Commission validly to find against them and made the alleged prejudgment more obvious. Therefore this Court would be justified in concluding from their failure to present the promised evidence that the cost data in question would not have been in aid of their case. In any event, the responsibility for this voluntary failure to present evidence is clearly the petitioners'. *Petition of New England Telephone and Telegraph Co., supra,* 120 Vt at 192, 136 A2d at 364.

■ Petitioners argue that since the contract with Vermont Electric Power Company relating to transmission was signed two days after the hearing in this case, this Court should presume that the Commission considered its judicial functions limited by the terms of its pending contractual engagement. Since the hearing preceded the signing, in the absence of compelling evidence to the contrary, this Court must presume that the Commission gave appropriate judicial consideration to the evidence presented and thereafter executed the contract with the subject matter of the hearing in mind. Arbitrary or capricious actions on the part of a trier of fact will not be presumed in the absence of evidentiary support. *Petition of Central Vermont Public Service Corp.,* 116 Vt 206, 220, 71 A2d 576.

■ Nor will the mere coupling of the judicial function of the Commission with the obligation to contract for St. Lawrence power, without more, raise a presumption of bias, prejudice, prejudgment or denial of due process. Matters must be brought to the attention of this Court overcoming the presumption that the trier acted properly and judicially, and compelling the conclusion that under the circumstances a fair and impartial trial could not be had, in order to establish a denial of due process. It is incumbent upon the appealing party to make demonstration of arbitrary treatment or unjust discrimination. *Vermont Electric Power Company* v. *Anderson*, 121 Vt 14, 147 A2d 875.

The only individual finding to which petitioners took and briefed exceptions on the grounds that prejudgment by the Commission appeared reads as follows:

> "There are at least fifteen other Companies in the State who have unidirectional electrical transmission lines, involving about 203 miles, according to the records of the Commission. To provide loop connections for all would entail enormous additional expense and time to complete them."

Petitioners further excepted to the finding on the grounds that it was immaterial, that there was no evidence in the case to support it, and that the Commission decided the case on extraneous matter, not on the merits. At the hearing counsel for petitioners consented to the taking of judicial notice by the Commission of its own records with reference to service areas and company interconnections as reported to the Commission by the various utilities in the State. In view of the reference to the records of the Commission it is apparent that the Commission was taking judicial notice of its own records, as contemplated and consented to at the hearing. Keeping in mind the statutory obligation of the Commission to consider the public good it cannot be said that such information is immaterial, or improper material for judicial notice. It is manifestly the duty of the Commission to have in mind the complete situation relative to the receipt and transmission of St. Lawrence power in considering this petition. This find-

ing is expressive of part of the burden on the petitioners to demonstrate to the satisfaction of the Commission that the subject matter of their petition justifies appropriate action based on the statutory tests of §2 of No. 193 of the Acts of 1951 in the presence of the circumstances described in the finding in question. This is not to say, however, that the Commission is in any measure relieved of the burden of weighing on its merits each such petition as received, and determining it on the basis of the standards set out in §2 of No. 193 of the Acts of 1951.

Nor does this finding, as it stands, indicate of itself that the Commission has prejudged the case as petitioners contend. Any consideration of any such petition must be made in the light of the background of facts revealed by the Commission's records relating to the distribution of electric power throughout the State, particularly where the cost burden may affect all users of electricity within its jurisdiction. Petitioners' exceptions to this finding are not sustained.

■ Of the remaining exceptions briefed, there was no other exception taken to a specific finding on the basis of any alleged prejudging by the Commission. Claims not raised below are not available here. *Scott* v. *Leonard*, 119 Vt 86, 101, 119 A2d 691; *Chevalier* v. *Tyler*, 118 Vt 448, 455, 111 A2d 722.

The first exception briefed related to a finding admittedly based on an exhibit in the case, so that petitioners' exception on the grounds of lack of evidence is not sustained. The finding relates to a preliminary hearing which did not and could not operate to foreclose the rights of petitioners to be heard here, and the finding does not give it that effect. The exception is not sustained.

■ The remaining two exceptions briefed deal with the adequacy of the transmission lines serving the electric systems of the petitioners. Conceding that these findings are inconsistent with each other, neither finding supplies nor even relates to the shortage of proof with respect to cost of construction on which this case turns. The inconsistency is immaterial and harmless, and petitioners' exceptions are unavailing.

194

*Petition of New England Telephone and Telegraph Co., supra,* 120 Vt at 194, 136 A2d at 365.

The petitioners having made no demonstration of arbitrary treatment, unjust discrimination or denial of due process, the evidence presented in this case justified the Commission's finding that the cost of construction of the proposed transmission line could not be established. This finding, by itself, was sufficient to support the Commission's determination that the proposed construction was not for the general good of the State.

What we have said in connection with the foregoing exceptions to the findings disposes of the exception to the order of the Commission, since that exception raises the issue of whether the order is supported by the findings, a question we have already decided in the affirmative. *Chevalier* v. *Tyler, supra,* 118 Vt 448 at 455, 111 A2d 722 at 726; *Vermont Motor Co., Inc.* v. *Monk,* 116 Vt 309, 311, 75 A2d 671.

*The order of the Public Service Commission is affirmed. Let the result be certified to the Public Service Commission.*

Note: Mr. Justice Holden did not participate in this decision.