# In Re Hathorn's Transportation Co., Inc.

[158 A.2d 464]

November Term, 1959

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed January 5, 1960

Reargument Denied March 2, 1960

*John H. Downs* (*Roger C. Cramton, Francis E. Barrett, Jr.* and *Kenneth B. Williams,* of Counsel) for the protestants.

*Black, Wilson, Coffrin & Hoff* for the applicant.

*John S. Burgess* for the Receiver in Bankruptcy.

**Smith, J.** This is an appeal to set aside an order of the Public Service Commission, dated January 2, 1959, which granted authority to Marcell's Motor Express, Inc. to operate as a common carrier within the State of Vermont over the same routes, and with the same restrictions and conditions, formerly issued to Hathorn's Transportation Co. Inc. under certificate of public good No. 2442.

The case is here upon the exceptions of the protestants, Gay's Express, Inc., St. Johnsbury Trucking Co., Inc. and H. P. Welch Company to the order of the Commission, on the grounds that the order is not justified or supported by the findings of fact made and filed by the Commission. Prot-

estants have excepted to numerous findings of fact made by the Commission, and have excepted as well to the Commission's failure to find in accord with various requests to find made by the protestants.

The various carriers involved will be referred to by their proper names, such as Hathorn, for Hathorn's Transportation Co., Inc., St. Johnsbury for St. Johnsbury Trucking Co., Inc., etc., for the sake of brevity in this opinion.

All the various parties to this proceeding are trucking concerns, engaged as common carriers in the State of Vermont. Hathorn received its certificate of public good No. 2442 in May 1950. Both Gay and St. Johnsbury received certificates on the same date, covering routes nearly identical to those given Hathorn. In September 1950 Welch received its certificate to operate over some of the same routes previously noted, and in August, 1955, the applicant Marcell received a certificate for less extensive intra-state rights than those held by the other carriers. All of these carriers were engaged in open competition for carrier traffic over the various routes in which they had mutual rights until 1957.

But during 1956 and 1957 Hathorn began to lose money on its operations. Involuntary bankruptcy proceedings were started against it, and, on January 4, 1958, the Commission was notified by letter from one of Hathorn's officers that it had ceased its operations under certificate No. 2442, and Hathorn ceased to operate on the routes granted to it after that date.

The United States District Court for the District of Vermont authorized the receiver in bankruptcy of Hathorn to sell the assets of Hathorn, including the intra-state and inter-state rights of that carrier. Marcell made the only bid received by the receiver for the assets of Hathorn, this bid being conditional on the transfer of all of Hathorn's Vermont Public Service Commission rights to Marcell. This bid was approved by the United States District Court on June 2, 1958, subject to the approval of the Public Service Commission for the transfer of the intra-state rights by the Public Service Commission.

A joint application was made on the part of Marcell and of Hathorn's receiver and trustee on July 16, 1959 to the

Public Service Commission, requesting the commission to transfer to Marcell the operating rights which Hathorn held under certificate No. 2442, or, in the alternative, to issue to Marcell new operating rights identical to those authorized by Hathorn's certificate No. 2442. This application was opposed by the various protestants here.

The Public Service Commission filed its report and findings of fact on Nov. 13, 1958. The order was filed on Jan. 8, 1959. It is from this order and the findings of fact upon which it is predicated that the protestants have taken their appeal to this Court.

The order appealed from reads in part as follows:

> "It is hereby Ordered that a Certificate of Public Good be and hereby is issued to Marcell's Motor Express, Inc. to operate as a common carrier within the State of Vermont, on and over the routes formerly operated by Hathorn's Transportation Co. Inc. under Public Service Commission Certificate No. 2442."

The first question presented to us, in essence, is the nature of the proceedings held before the Public Service Commission, and the actual effect of the order issued. The protestants claim that finding No. 32 of the Commission, which, in part, states: "the Commission did consider the franchise cancelled by reason of the notice from Hathorn's that it was no longer operating," removes from our consideration any question of whether the proceedings before the Commission were transfer proceedings, and that the only question before this Court is whether the findings of fact of the Commission were sufficient for them to issue a new certificate of public good to Marcell. Protestants further claim that the failure of the applicants to file a cross-appeal from the order of the Commission removes the issue of transfer or new certificate from this case.

The question presented to this Court in an appeal of this nature is whether the order made below is supported by the findings. *Hewey* v. *Richards*, 116 Vt. 547, 548, 80 A. 2d 541. That is, not whether the grounds upon which the commission professed to proceed are tenable, but whether the order itself is correct. 42 Am Jur, Public Administrative Law, p.

683, and cases cited. It is well settled that a certificate of this nature is a franchise, and is a property right. *State* v. *Gibbs and Lynch*, 82 Vt. 526, 528, 74 A. 229, 24 L. R. A., N. S., 555. It was stated by this Court in *Jewett & Son* v. *Smardon*, 101 Vt. 488, 490, 144 A. 683, that one operating under a certificate similar to the one issued to Hathorn occupies a position of economic advantage and opportunity that carries with it a substantial transferrable value.

■ It is true, of course, that a sale or assignment of this certificate by the possessor to another does not, in itself, give the buyer the privilege to exercise the rights granted in the certificate. The approval of the Public Service Commission is necessary before this can be done, because the Commission is given the power to revoke or amend such certificate by statute, just as it is given the power to issue an original certificate. 30 V. S. A. §237. But it is obvious that an applicant to the Commission for the assignment of the rights to operate under a certificate originally granted to another is in a position of decided advantage if he has an agreement of sale of such rights from the original holder at the time of his application to the Commission for such transfer.

■ The Commission did find, as the protestants claim, that Hathorn had cancelled its franchise by reason of the letter received from Hathorn that the company had ceased to operate. But Hathorn, if such was its intent, had no power to cancel its franchise or certificate. The power to revoke was vested only in the Commission. 30 V. S. A. §237. And the findings of the Commission state clearly that no official cancellation or revocation had been made of Hathorn's certificate No. 2442.

■ The general rule is that a franchise does not expire by reason of the omission or commission of acts on the part of the grantee, although it be in violation of the terms of the franchise. It continues in full force until the penalty of forfeiture is claimed by the state granting the franchise. The penalty of forfeiture, according to the weight of authority, can

be exacted only through a legal proceeding by which the cause of forfeiture is judicially ascertained, and the grantee of the franchise is given an opportunity to be heard. *Wilmington & R. R. Co. v. Downward,* 8 Houston (Del.) 227, 14 A. 720, 723; 23 Am. Jur., Franchise, p. 738.

 The provisions of 30 V. S. A. §237 and 30 V. S. A. §238 clearly indicate that a certificate of public good cannot be issued without advertising and public hearing. This provision is obviously so that all who wish to be heard may appear before the Commission to give their evidence upon a matter of public importance involving a duty to the public. The revoking of such a certificate, or the amending of it, might equally well affect a duty to the public so that there would be an equal necessity for a public hearing. We hold that the legislative intent, under the statute, is that a public hearing is necessary to revoke a certificate in the same manner as is necessary to issue a new certificate, or to amend one which is in effect.

 Under this holding it necessarily follows that certificate No. 2442, issued to Hathorn, was in full force and effect at the time of the hearing appealed from, and that the Commission's finding of fact that they "considered" the certificate cancelled, was not a finding of fact, but an erroneous conclusion of law. Findings that are mere legal conclusions are without force and this Court will disregard an unwarranted inference. *Smith* v. *Vermont Marble Co.,* 99 Vt. 384, 396, 133 A. 355. So also the finding of the Commission that the original certificate of public good, No. 2442, issued to Hathorn, "is not now in effect" is a similar conclusion of law based upon error, and this Court will disregard it.

The fact that certificate No. 2442 was unrevoked and still in force at the time of the hearing before the Commission, made these proceedings only a transfer matter which was exactly what the applicant had requested in its application.

The matters before a public service commission to be adjudicated are somewhat different in a transfer matter than in an application for an original certificate of public good. In

the Pennsylvania case of *Hostetter* v. *Pennsylvania Public Utility Commission*, 160 Pa. Super. 94, 49 A.2d 862, 863, the Pennsylvania court considered the duties of the Public Utility Commission when the matter involved was the transfer of the rights of one carrier to another. A provision in the Pennsylvania statutes provided that a certificate of public convenience must first be issued by that Commission before the exercise of any "franchise of privilege" could be exercised by an applicant. No evidence was introduced in the transfer hearing appealed from to show a convenience to the public.

Ruling upon the necessity of such evidence of public convenience the Pennsylvania court stated:

> "The factor of necessity was settled when Conestoga's (the transferor) certificate was issued. Conestoga rendered service under its certificate until the transfer to Motor Freight. These circumstances establish public necessity for the service, and in the absence of proof to the contrary, the Commission was warranted in concluding in the proceedings for the transfer that the element of public necessity still existed."

The protestants argue, however, that because there was a suspension of service here by Hathorn for some months prior to the hearing before the Commission that there was a duty on the part of the Commission to hear evidence, and make findings on the matter of public good, even though the proceeding was one of transfer. Protestants further claim that because of the lapse in service on the part of Hathorn that the Commission has to decide on the question of public good on the facts existing at the time of the transfer hearing.

A similar situation was considered by the Supreme Court of Ohio in the case of *Ramsey* v. *Public Utilities Commission*, 115 Ohio 394, 154 N. E. 730. In the Ohio case A and B, two carriers, applied for the transfer of the certificate of convenience and necessity held by A, to carrier B. The protestants in that case, like those in the case before us, claimed that because there had been a suspension of service for six months by carrier A and, that in the interim period the protestants were operating over the same routes as had A, that the certificate held by A should be cancelled.

The Ohio court held:

> "This proceeding involved only the question of transfer of the certificate for an agreed price. That was the only question before the Commission, and that was the only relief sought, of which notice was given by publication. Upon the hearing of that feature the Commission had full power to determine the nature of the contract involving the nature of the certificate, the character and responsibility of the new owner, its ability to give proper and adequate public service, and any other feature materially affecting the sale of the certificate to the vendee. In such a proceeding the abandonment by the original certificate holder, or the furnishing of adequate service by it was not germane under the application made, and the published notice given. Were it otherwise the Public Utilities Commission would, in every case involving the transfer of certificates, be required to enter into an extended hearing relating to the adequacy of service between competing transportation companies."

■ Certificate No. 2442, granted to Hathorn, had never been revoked. The question of public good had been determined by the Commission at the time of the granting of the certificate to Hathorn. On the hearing relative to the transferring of the certificate it was not the province of the Commission to insure that the public should be benefited as a condition of the change of ownership. The Commission's duty at the transfer proceedings was to see that no such change would be made that would work to the public detriment. *Montgomery County* v. *Public Service Commission*, 203 Md. 79, 98 A.2d 15, and see *Tamiami Trail Tours Inc.* v. *Public Service Commission*, 213 Ga. 418, 99 S.E. 225.

■ It not being necessary for the Commission to decide the question of public good in the matter of this transfer application, it follows that the findings of the Commission on this matter are immaterial because they do not affect the result, and we do not consider immaterial findings. It is our

rule that exceptions to immaterial findings will not be considered. *University of Vermont* v. *Wilbur's Estate*, 105 Vt. 147, 174, 163 A. 572, and cited cases.

The protestants have also excepted to the findings of the Commission that Marcell is possessed with the necessary equipment and experience, and is ready, able and willing to operate the routes formerly operated by Hathorn under the same restrictions and conditions.

 The findings of fact of the Public Service Commission have the force and effect of a special master on transfer to the Supreme Court for review. 30 V.S.A. §11. It is not for this Court to say what weight shall be given to the evidence. This Court can only determine whether the evidence was proper for the consideration of the Commission and whether it tends to show the facts found. *Baxter* v. *Blodgett*, 63 Vt. 629, 632, 22 A. 625. As stated by Justice Barney in *Petition of Lyndonville Village*, 121 Vt. 185, 190, 151 A.2d 319, 324,

> "It is not the function of this Court to require that the facts be found in accordance with our view of the evidence, thereby substituting our judgment for that of the trier. In this matter, by legislative mandate, the Commission is the trier of the facts. Their weighing of the evidence must be sustained if there is evidence to support it."

The record of the case furnished to this Court discloses that the Commission had before it evidence as to the financial standing of Marcell. There was evidence as to the amount of personal property owned by Marcell as well as to its operating ratio over some period of years, with the last figures showing a profit. The protestants, themselves, admit in their brief that Marcell may be regarded as a large common carrier with considerable experience in that field. The president of Marcell's testified as to his firm's willingness, fitness and ability to take over the operation proposed, and he was subject to cross-examination by the protestants. Summing up, it is sufficient to say that there was evidence before the Commission tending to show that Marcell was ready, willing and able to

operate and the weight of that evidence was for the determination of the Commission.

An exception was taken by the protestants to the exclusion of a question, on cross-examination, as to a purported cease and desist order against Marcell's by the Interstate Commerce Commission sometime in the past. The Public Service Commission "is necessarily endowed with a liberal discretion in passing upon the competency of tendered evidence." *In re New England Power Corporation*, 103 Vt. 451, 459, 156 A. 390, 392. Evidence has already been received by the Commission that no prosecution for violation of state or federal trucking laws had ever been brought in Vermont against Marcell. We find no abuse of the Commission's discretion in this instance.

The protestants have also filed some forty-six objections to the Commission's failure to make findings of fact as requested in protestants' requests to find. Each of these exceptions cites the request of the protestants by number only, nor is there any reference made in any of them to any specific part of the record of the case before us to substantiate the contention made, that such findings should have been made from the evidence, and the undisputed evidence, before the Commission.

These exceptions to failure to find in each instance refer to the requests made by number only. With no attempt to point out any specific evidence which would sustain them, they are not for our consideration. *Smith* v. *White's Estate*, 108 Vt. 473, 478, 188 A. 901; *Cook* v. *Holden*, 115 Vt. 409, 411, 35 A.2d 353; *Petition of Residents of Shaftsbury*, 117 Vt. 502, 505, 95 A2d 41; Supreme Court Rule 8, par. 5.

The Commission, in the hearing below, because of its erroneous conclusions of law that certificate No. 2442, issued to Hathorn, had been revoked, did not, in its reasoning, treat the hearing as one for the transfer of a certificate of public good, but its order for all practical purposes, in giving Marcell the identical and same routes, rights and restrictions as Hathorn had enjoyed under certificate No. 2442, was a transfer of that certificate to Marcell.

This order was reached after a fair hearing, and the findings made, while in greater length than possibly was needed under the circumstances, satisfied the statutory requirements. The fact that there was error on the part of the Commission in its finding that certificate No. 2442 had been revoked or cancelled was not error that in any way prejudiced the rights of these protestants.

A fair hearing was given to the parties by the Commission, proper findings were made and the statutory requirements satisfied. The Commission's order, as applied to the facts before it, and viewed in its entirety, produced no arbitrary results. We need inquire no further. *Petition of Central Vermont Public Service Corporation re Increased Rates*, 116 Vt. 206, 209, 71 A.2d 576.

*The order of the Public Service Commission is affirmed. Let the result be certified to the Public Service Commission.*