# Pennconn Enterprises, Ltd. and Richard Kaufman v. H. D. Huntington, H. D. Huntington, Inc. and Huntington Homes

[538 A.2d 673]

No. 86-215

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed November 25, 1987

*Thomas Ryan Paul* of *McCarty Law Offices*, Brattleboro, for Plaintiffs-Appellants.

*M. Jerome Diamond* and *Stephen C. Smith* of *Diamond & Associates, P.C.*, Montpelier, for Defendant-Appellee Huntington Homes, Inc.

*Abare, Nicholls & Belcher, P.C.*, Barre, for Defendant-Appellee H. D. Huntington.

**Dooley, J.** This appeal arises from a contract action involving the development of a condominium project in southern Vermont. Plaintiff Pennconn Enterprises, Ltd. is a Pennsylvania corporation, and is the developer of that project. Plaintiff Richard Kaufman is the president of the plaintiff-corporation.

On August 1, 1984, plaintiffs entered into a contract with defendants under which defendants were to deliver certain modular condominium units to the plaintiffs' development site. The plaintiffs allege that defendants failed to perform according to the contract, and filed suit in February of 1986 for damages from alleged delays and defects in the modular units. Defendants moved to dismiss on the grounds that plaintiff-corporation was doing business in the state of Vermont at the time of the contract but had failed to register with the Secretary of State as required by 11 V.S.A. § 2101. Defendants argued below, and again before this Court, that this failure made the contract unenforceable pursuant to 11 V.S.A. § 2120.

The trial court held a hearing and took evidence on the question of whether plaintiff-corporation was obligated to register in the state. Based on the evidence presented, the court found that on August 1, 1984, the date of the contract, plaintiff-corporation was doing business in Vermont without a certificate of authority. Thus, the court dismissed the action as to both the corporate and individual plaintiffs.

The plaintiffs attack the dismissal on five separate grounds: (1) the corporate plaintiff was not "doing business" on the date of the contract with defendants; (2) the trial court improperly considered evidence of activities of the corporate plaintiff after the date of the contract; (3) dismissal of the action is not the proper remedy in this case; (4) the trial court's findings do not warrant dismissal as to the individual plaintiff; and (5) the action was improperly dismissed "with prejudice." We treat these claims in the order presented.[1]

---

[1] The trial court also dismissed the action because, although plaintiff-corporation did obtain a certificate of authority, the certificate had been revoked by the Secretary of State on the date when suit was instituted. See 11 V.S.A. § 2102. In view of our decision on the main claim in this case, we need not treat this independent ground for dismissal.

■ We start by examining the statutes on which the trial court based its judgment and the facts on which it relied. There are two relevant statutes, 11 V.S.A. § 2101(a) and 11 V.S.A. § 2120(a). 11 V.S.A. § 2120(a) provides that a foreign corporation cannot maintain an action in this state "upon a contract made by it in this state if, at the time of making such contract, it was doing business in this state without lawful authority." The question of whether the corporation was acting "without lawful authority" is determined under 11 V.S.A. § 2101(a). See *West-Nesbitt, Inc.* v. *Randall*, 126 Vt. 481, 483, 236 A.2d 676, 677-78 (1967); *A. & W. Artesian Well Co.* v. *Tornabene*, 124 Vt. 413, 415, 207 A.2d 140, 141 (1965). That statute provides, in pertinent part, that:

> (a) No foreign corporation shall have the right to transact business in this state until it shall have procured a certificate of authority so to do from the secretary of state . . . .
>
> Except as otherwise provided, "doing business" shall mean and include each and every act, power or privilege exercised or enjoyed in this state by a foreign corporation except the mere ownership of real property which is not producing any income, or which is not used in the performance of a corporate function.

The import of these statutes is that a foreign corporation that is doing business in Vermont at the time it makes a contract is precluded from enforcing the contract in our courts unless it had procured a certificate of authority before it entered into the contract. See *A. & W. Artesian Well Co.*, 124 Vt. at 416, 207 A.2d at 142.

The trial court found that the plaintiff in this case was doing business at the time it entered into the contract with defendants based on the following facts. Plaintiff-corporation was engaged in the business of developing real property for sale. In April of 1984, it entered into a purchase and sale contract to purchase a tract of land in Dover, Vermont. Plaintiff-corporation intended to build nine condominiums at the site and sell them. In the same month, plaintiff obtained a land survey and applied for a sewer permit. In June, plaintiff-corporation applied to the state for a public building permit. In pursuit of this permit plaintiff-corporation hired an engineering firm to prepare and submit to the state plans for a condominium project on the site. During this time, it hired a Vermont lawyer and received its town sewer permit.

After a number of meetings, plaintiff-corporation entered into a contract with defendants to purchase modular condominium units and have them delivered to the Dover site. The contract was entered into in Vermont on August 1, 1984. Plaintiff did not receive a certificate of authority to transact business in Vermont until October, 1984.

The trial court found that on August 1, 1984 "plaintiff-corporation was actively engaged in the performance of its primary corporate purpose, the acquisition, development, improvement and sale of real property here in the State of Vermont." It found that by August 1st, the accomplishment of plaintiff's purposes had reached the point that it was required to register under 11 V.S.A. § 2101(a).

The question of whether a corporation is doing business is essentially one of fact. *Hibbard, Spencer, Bartlett & Co.* v. *District Court*, 138 Colo. 270, 273, 332 P.2d 208, 209 (1958). If the trial court's finding is supported by substantial evidence and is consistent with the statute, it must be affirmed. See *Long Mfg. Co.* v. *Wright-Way Farm Service, Inc.*, 39 Mich. App. 546, 549, 197 N.W.2d 862, 864 (1972). There is ample support here.

The definition of doing business under 11 V.S.A. § 2101(a) is extremely broad—it includes "each and every act, power or privilege exercised or enjoyed in this state."[2] The breadth of this term is evinced by the narrowness of its sole exclusion. The ownership of real property is excluded but only if the property does not produce income or is not used in the performance of a corporate function. Certainly, plaintiff has engaged in "acts" in this state in pursuit of its corporate purposes.

■ There are three other factors that are important in this case. First, the most important indicator of whether a foreign corporation is doing business in another state is whether the acts are part of the functions for which the corporation was created. See

---

[2] A leading treatise on corporate law says of the Vermont statute:

Perhaps the broadest [definition statute] is that of Vermont which holds that *anything* a foreign corporation does within the state requires qualification "except the mere ownership of real property which is not producing any income, or which is not used in the performance of a corporate function". The statute does not define "corporate function," but it may be assumed to include anything related in any way to the corporation's activities, e.g., maintaining a ski lodge for the benefit of executives and customers.

3A Z. Cavitch, Business Organizations § 63A.02[2][b], at 63A-13 (1987) (footnote omitted) (emphasis in original).

generally 17A Fletcher Cyclopedia of Private Corporations § 8466 (rev. ed. 1987). It is undisputed that the activities of plaintiff-corporation in Vermont were part of its corporate business.

Second, plaintiff-corporation applied for and, on at least one occasion obtained, regulatory permits in furtherance of its condominium development project. As this Court stated in *A. & W. Artesian Well Co.*, the purpose of registration is to provide information to government agencies and individuals who might deal with the corporation:

> The furnishing of the data relative to such corporation's corporate standing, and its financial standing, is so that residents of this state may have obtainable to them the same information on such foreign corporation's business responsibility as is available to such residents on the stability of domestic corporations under our corporation laws, before contracting with it.

124 Vt. at 415, 207 A.2d at 141-42. The presence of this information is also critical to regulators who rely on its availability if it is needed to enforce the laws they administer. When a corporation has reached the point in its activities that it is applying for governmental permits, the intent behind 11 V.S.A. § 2101(a) requires a finding that the corporation is doing business here.

Third, while it is impossible to create an all-inclusive definition of "doing business," the decisions from other states indicate that it is often possible to define activities that will not be considered "doing business." For example, the Model Business Corporation Act, adopted in many states, includes a list of ten kinds of activities within a state that will not be considered in determining whether a corporation is doing business. American Bar Found., Model Business Corporation Act § 106 (2d ed. 1971). None of the activities on that list were used by the trial court here in finding that plaintiff-corporation was doing business in Vermont.

Plaintiff's final argument on the doing business point is that it fits within an exception to the definition of doing business recognized in *Jerene Enterprises, Inc.* v. *Burlington Housing Authority*, 363 F. Supp. 1380 (D. Vt. 1973). The federal district court in *Jerene Enterprises* refused to dismiss a construction contract action brought by an out-of-state contractor on grounds that it was "doing business" in Vermont without registering with the Secretary of State because plaintiff's activities were "merely prepara-

tory to the commencement of doing business." 363 F. Supp. at 1382. Without deciding whether the exception used in *Jerene Enterprises* is valid, we can easily distinguish the case. The activities within Vermont in *Jerene Enterprises* were nominal—nothing more than signing the contract—where here they were substantial. *Jerene Enterprises* is a trial court decision involving a finding of fact—here we are reviewing a trial court decision that made the opposite finding. We find nothing in *Jerene Enterprises* that dissuades us from our conclusion in this case.

Plaintiff next argues that the court made findings about activities after the contract with defendants was signed and that the consideration of these post-contract activities was error. Many of these findings were actually sought by the plaintiff based on a number of its arguments. Specifically, it relied upon post-contract facts to show its pre-contract activities were "merely preparatory to the commencement of doing business." Further, it emphasized post-contract facts in support of an argument that its contacts with Vermont made the corporation "basically a citizen of the state."

It is clear that the trial court relied on the correct law that plaintiff's activities in Vermont were to be evaluated at the time of the making of the contract. Thus, the additional findings are not necessary to the decision and are surplusage and of no effect. See *Greenberg* v. *Hadwen*, 145 Vt. 112, 115, 484 A.2d 916, 918 (1984); *Town of Lyndon* v. *Burnett's Contracting Co.*, 138 Vt. 102, 107, 413 A.2d 1204, 1206-07 (1980); *In re Hathorn's Transportation Co.*, 121 Vt. 349, 356-57, 158 A.2d 464, 469 (1960).

Third, plaintiff-corporation argues that denying it access to the Vermont courts to enforce its contract would be inequitable in light of the intent of the Legislature in enacting 11 V.S.A. § 2120 and in light of its extensive contacts with the state. On this point, plaintiff's dispute is actually with the Legislature, which has very clearly spelled out the consequences of doing business without lawful authority. If the consequences are harsh, they can "only arise by reason of such corporation's own volition." *A. & W. Artesian Well Co.*, 124 Vt. at 416, 207 A.2d at 142. It is within the prerogative of the Legislature to adopt this policy to induce foreign corporations operating in the state to register here.

Fourth, plaintiffs claim that the dismissal of the suit as to the individual plaintiff, Richard Kaufman, was in error because he is not subject to the bar of 11 V.S.A. § 2120(a). The complaint in

this case is unclear as to the theory on which the individual plaintiff brings the action but appears to allege that he was a party to the contract. The trial court made no findings on this issue—all its findings involved the corporate plaintiff.

The defendants have responded to this argument by pointing out that 11 V.S.A. § 2120(a) also bars a suit by an "assignee" or by someone "claiming under . . . such corporation" and that plaintiff Kaufman must fit these categories if he has any right to sue at all. While defendants may ultimately prevail on this point, the problem now is that the trial court has made no findings or conclusions with respect to plaintiff Kaufman and the complaint does not clearly state that he has brought the action as an assignee or claimant under the corporation. Accordingly, the judgment must be reversed as to plaintiff Richard Kaufman.

Finally, plaintiff-corporation argues that the suit should not have been dismissed "with prejudice" because the underlying contract remains valid. There is no question that our law deprives plaintiff-corporation of a remedy within this state, but does not affect the validity of the underlying contract. See *Redd Distributing Co.* v. *Bruckner*, 128 Vt. 635, 638, 270 A.2d 580, 582 (1970); *A. & W. Artesian Well Co.*, 124 Vt. at 417, 207 A.2d at 142. Thus, as far as Vermont law is concerned, plaintiff-corporation can bring an action on the contract in another state if it can obtain jurisdiction over defendants. See, e.g., *Kemp* v. *Darke County Farm Bureau Coop. Ass'n*, 115 Ohio App. 1, 184 N.E.2d 103 (1961).

▪ Under V.R.C.P. 41(b)(3), any dismissal—other than certain types provided for in the rule and not here applicable[3]—"operates as an adjudication upon the merits." See *Cody* v. *Estate of Cody*, 134 Vt. 113, 114, 352 A.2d 684, 685 (1976). In a case such as this, the adjudication should be seen as having resolved only the mer-

---

[3] One can argue based on *Costello* v. *United States*, 365 U.S. 265, 285 (1961), that one of the specific dismissal actions specified in Rule 41(b)(3)—that is, dismissal for lack of jurisdiction—is present here. In *Costello*, the Court dismissed for failure to file an affidavit of good cause in connection with a denaturalization proceeding where the affidavit was a prerequisite to the action. The Court found that the dismissal was actually "for lack of jurisdiction" by treating failure to comply with a precondition requisite as a bar to jurisdiction. Although the same argument could apply here, we decline to rule on this basis. *Costello* has been extensively criticized. See 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4435, at 334-36 (1981). We prefer the rule that dismissal for failure to meet a prerequisite is normally an adjudication only on the merits of the issue whether the prerequisite was met. See *id.*

its of what was actually adjudged. Therefore, the plaintiff-corporation would not be precluded by res judicata from litigating its underlying claim where it is not barred by 11 V.S.A. § 2120(a).

> Thus a judgment of a state court for the defendant on the ground that the plaintiff's remedy is barred because of its failure to comply with the corporate laws relative to doing business in the state . . . is res judicata in the courts of that state and in the federal courts sitting in that state in diversity cases. The judgment would not, however, be on the merits for purposes of res judicata in the courts of other states or in the federal courts sitting in those other states.

1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.409[6], at 342 (2d ed. 1984) (footnotes omitted). In view of V.R.C.P. 41(b)(3), the inclusion of "with prejudice" in the final judgment in this case was surplusage. Since it may be confusing in light of the limited adjudication in this case, we will strike it from the final judgment. See *First Nat'l Bank* v. *Avtek, Inc.*, 134 Vt. 392, 399, 360 A.2d 80, 85 (1976); *Davis* v. *Davis*, 128 Vt. 495, 498, 266 A.2d 466, 468 (1970).

*The judgment order dismissing the action as to Pennconn Enterprises, Ltd., as modified to strike the words "with prejudice," is affirmed. The judgment order dismissing the action as to Richard Kaufman is reversed and remanded.*