Citifinancial, Inc. v. Balch *ex rel.* Estate of Ballard, No. 476-6-10 Rdcv (Teachout, J., Feb. 6, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                        **CIVIL DIVISION**
**Rutland Unit**                                          **Docket No. 476-6-10 Rdcv**


**Citifinancial, Inc.**
       **Plaintiff**

**v.**

**Judith Balch, Special Administratrix of the Estate of Theodore Ballard,**
       **Defendant**


### DECISION
### Defendant's Motions for Summary Judgment

This case is before the Court on Defendant's Motions for Summary Judgment, filed on July 27, 2010 and July 30, 2010. Defendant's initial motion argues that this foreclosure action is barred by res judicata. The supplement motion argues that the note underlying this mortgage and the mortgage are invalid because Theodore Ballard was under guardianship when he signed them. Oral argument was held on December 28, 2011. Plaintiff is represented by Attorney Andrew H. Montroll. Defendant is represented by Attorney William J. Bloomer.

This foreclosure case arises out of a note and mortgage signed by Theodore Ballard on June 30, 2008. At that time, Mr. Ballard was under a voluntary guardianship. On July 30, 2005, the Fair Haven Probate Court had appointed Leala Bell as Mr. Ballard's guardian with full powers. Ms. Bell was a signatory on the note in this case, although not the mortgage. However, she did not show that she signed the note in her capacity as Mr. Ballard's guardian; rather, she simply signed her own name. There is no showing that the conveyance of a mortgage deed was ever submitted to the Fair Haven Probate Court for its approval.

Prior to the filing of the present suit, Citifinancial brought a foreclosure action against Mr. Ballard in October 2009. In the prior action, the Rutland Superior Court denied Citifinancial's Motion for Summary Judgment. In denying the motion, the Court issued an order giving Citifinancial 30 days to correct several errors in its motion. When Citifinancial did not timely comply with this order, the Court dismissed the claim in an Order dated June 2, 2010. On June 21, 2010, Citifinancial filed a new complaint for foreclosure, initiating the present case.

Defendant's first ground in support of summary judgment is that the present suit is barred by res judicata because of the July 21, 2010 dismissal of the prior suit. Res judicata, however, only applies where a prior claim is adjudicated on the merits. See *In re St. Mary's Church Cell Tower*, 2006 VT 103, ¶ 8, 180 Vt. 638. It is clear that the Court's June 21, 2010 Order, while dismissing the case, did not operate as a final adjudication on the merits. Rather, the dismissal was for Citifinancial's failure to comply with a prior court order in a timely fashion. As the Vermont Supreme Court has stated, an "adjudication should be seen as having resolved only the

merits of what was actually adjudged." *Pennconn Enters., Ltd v. Huntington*, 148 Vt. 603, 609-10 (1987). The June 21, 2010 Order did not actually adjudge the merits of Citifinancial's foreclosure claim. Therefore, res judicata is not a bar to the present action.

Defendant's second argument in support of summary judgment is that Mr. Ballard lacked the capacity to enter into a valid contract at the time he signed the note and mortgage because he was under guardianship. Generally, persons under guardianship do not have the full legal capacity to enter into binding contracts. See Restatement (Second) of Contracts, § 12(2)(a). Rather, it is the ward's guardian who has the legal authority to enter into contracts on the ward's behalf. Contracts entered into by the guardian to dispose of the ward's real estate must be approved by the Probate Court. 14 V.S.A. § 2881. There is no dispute that Ms. Bell did not sign the note as Mr. Ballard's guardian, nor did she seek approval from the Probate Court to mortgage the property. Therefore, Mr. Ballard, as a person under guardianship and without power to act on his own behalf, is not bound by the note or mortgage.

Citifinancial argues that the Court should deem that Mr. Ballard had capacity because the guardianship was a voluntary one. Citifinancial argues that there is no indication that Mr. Ballard was operating under a mental disease or defect at either the time he entered into the guardianship or at the time he signed the note.

Citifinancial's argument and proposed outcome would undermine the function and operation of guardianship law, including voluntary guardianships. Any person desiring "assistance with the management of his or her affairs" may enter into a voluntary guardianship. 14 V.S.A. § 2671(a).  Doing so involves a serious court process resulting in the transfer of authority to the guardian. 14 V.S.A. § 2671(f).   If the Probate Court approves the guardianship, the effect is that thereafter the guardian has control over the affairs of the ward.   It is not like a durable power of attorney, where the grantor retains the power to act for himself or herself.     14 V.S.A. § 3506.

For the Court to enforce a note and mortgage without a proper signature of the guardian or approval of the Probate Court would be to undermine the Order of the Probate Court. Under Citifinancial's view, in any contractual dispute, this Court would have to examine the mental state of the ward at the time he entered into the guardianship and determine if he should be found to have the legal capacity to contract notwithstanding the valid guardianship.  While there are circumstances in which a contract entered into by a person with a mental incapacity is not void but only voidable, the transfer of authority by the Probate Court to a guardian is not one of them, even if the guardianship is initiated voluntarily.  See Restatement (Second) of Contracts, § 13, Comments a and c.

The clarity of authority achieved by voluntary guardianships in circumstances when a person's mental capacity may be declining or waxing and waning as well as the goal of judicial economy would be seriously compromised if courts were required to disregard the existence of the guardianship and make an independent determination in every case about the mental state of the person at the time of establishing a voluntary guardianship and at the subsequent time of signing a legal document.  Lenders in Plaintiff's position have the ability to protect their interests by ascertaining legal capacity of a potential borrower such as Mr. Ballard prior to a transaction,

2

and by requiring that documents be executed in proper form showing valid legal capacity.

The Restatement also supports the bright-line approach: all individuals under a guardianship, even a voluntary one, lack the legal capacity to contract, at least without the express consent of the guardian and the Court. See Restatement (Second) of Contracts, § 13 comment c ("Where a statute authorizes the appointment of a guardian on the voluntary application of the ward-to-be without any adjudication of disability, the ward may retain some capacity to contract, subject to subsequent judicial approval, either where the guardian consents or where the guardian's control of the property is not impaired.").

In this case, the guardian had total powers over Mr. Ballard's affairs. The guardian's control was not impaired—it was complete; nothing was reserved for the ward. As the note and mortgage were never approved by the Probate Court and Mr. Ballard was under a valid guardianship at the time they were executed, they are not enforceable against him or his estate. Leala Bell may be liable to the Plaintiff, but his estate is not, nor is its real estate subject to the mortgage to the Plaintiff. Accordingly, Defendant is entitled to summary judgment as a matter of law.

**ORDER**

Defendant's Supplement Motion for Summary Judgment, filed July 30, 2010, is *granted*. Defendant's counsel shall prepare a Judgment. All other motions are moot.

Dated this 6th day of February, 2012

_____
Hon. Mary Miles Teachout
Superior Court Judge